All right, we call the next case Hill v. New Orleans. Ed Aisle. Good morning, your honors, and may it please the court, Patrick Egan here on behalf of the appellants who are nine police officers who were sued in their individual capacities as part of this claim under section 1983. You know, that's one thing that stuck out for me is the motion for summary judgment. We've got a Fourth Amendment claim and we've got a due process claim here, basically. Sure. And particularly on the due process claim, what I'm accustomed to seeing on a summary judgment is you take each based on qualified immunity. Sure. The defendants takes each individual who they claim is entitled to qualified immunity and they lay out what the facts are that show that he wasn't involved in the arrest or investigation or for some reason he's entitled to qualified immunity. And here the motion for summary judgment was just totally global. Sure. I mean, that's the way I read it. And it seemed to focus on the Fourth Amendment claim by saying that, you know, the warrant was issued and the motion to suppress was granted. So that means the investigation was totally correct. And I didn't see where the defendants addressed the facts relating to the due process claims. Sure, Your Honor. And there are maybe two reasons for that. The first is more procedural and the second is more, well, it's also procedural. But the first reason is that we participated in this case from the beginning and I think plaintiffs would concede that there's plenty of discovery taken in this case. There's plenty of back and forth. There's plenty of discussion. And this isn't the first Fourteenth Amendment due process claim we've ever seen. Let me also note that there were, I believe, 18 claims in the complaint. That's a new case. This is today's case and the other cases, you know, the evidence is in those cases. Sure. We're dealing with the evidence in this case. Sure. So when we look at a Fourteenth Amendment due process claim, we consider that claim to be a claim for right to a fair trial. And in order to validate a claim like that, the right to a fair trial, in general, the plaintiff will obtain evidence from the prosecutors, will obtain and provide evidence from their defense attorneys, will obtain and provide evidence from what occurred at the trial, will disclose what they know about what occurred at the trial. And there's this whole big meaty record that's provided. And we were provided with none of that. So, yes, I will concede that the summary judgment perhaps focuses a little too much on the Fourth Amendment because those are the claims we usually see. And especially those are the claims that we see when we've gone through discovery and every question has been about a Fourth Amendment issue. And we've never heard anything about what occurred at a trial or what standard was applied or who testified at the trial. So that's one of the procedural issues. The other issue that we had in this case, or the other reason why we moved globally, is that the defendants don't have the burden on qualified immunity. The plaintiffs have the burden of defeating qualified immunity. So if a defendant invokes qualified immunity, it's incumbent upon the plaintiff then, the burden shifts to the plaintiff, to demonstrate the deprivation of a constitutional right. And then also to demonstrate that the defendants individually acted in an objectively unreasonable manner in depriving the plaintiff of his constitutional rights. See, the task of the district judge then is to sort through all the evidence and determine whether the defendant is entitled to qualified immunity. And when he doesn't get any help from the defendant, that's a very difficult task. You know, he wrote this long opinion, but he still didn't consider each individual defendant, whether that individual defendant was entitled to qualified immunity. And I can understand why he didn't, because he didn't have any help from the defendants. Well, and that goes, I think, to both of my answers, which is the help doesn't need to come from the defendants. It's supposed to come from the plaintiffs. Because once qualified immunity is invoked, notice is given to the plaintiffs that they have to overcome this. And as Ashcroft v. Iqbal clearly establishes... Don't you have a duty that precedes that? Do you have a duty to show that the officer was in good faith in acting? That's actually been, that standard has been relaxed. So the good faith standard actually no longer does apply. But yes, the officer has the duty of invoking qualified immunity. And so in our case, the officers each individually invoked qualified immunity, both in their answers and then in the... They showed that they were acting in the course of their employment or something like that. The motion for summary judgment is essentially a one-liner. It just says the defendants are in the course of their employment or in the course of their employment. I mean, that's essentially what the motion says. And the brief in support of it talks about the Fourth Amendment. It doesn't talk about the due process. You go into some detail on the Fourth Amendment issue, but not on the due process. So if I'm hearing you, I think you're saying that the defendants did not invoke qualified immunity. Well, they pleaded conclusory and didn't give the judge any help in determining whether they were entitled to it or not. And, you know, in Kenny, I mean, I realize, you know, that's what the law is, that when the judge finds that whatever he finds, if he finds genuine issues of material fact, then we're obligated to accept that unless the judge does not give, does not analyze the facts and determine, you know, give us some reason why there are issues of fact. And I'm just telling you that as to most of the defendants here, the judge didn't do that, and I know why he didn't do it. He didn't have any help. I mean, he didn't have any help from the defendants. Sure. And again, he also similarly didn't have any help from the plaintiffs. Well, that may be right, too. But anyway, we don't have any analysis on a whole lot of these defendants, like, for example, the first responding officer. Sure, Lewis and Harr. You know, we don't know whether they participated in that investigation or not. So one wonders how summary judgment was denied when clearly the plaintiff couldn't have met their burden of demonstrating that these officers participated in a constitutional violation. Let's look at it coming back at the waiver issue. The plaintiffs claimed that you waived this claim that the court reversibly erred in failing to analyze qualified immunity as to each individual defendant. And in your reply brief, you point out at footnote 10, at page 10, that they asserted in their answer that, and you named the various defendants, invoked the defense of qualified immunity. And then you say in your motion for summary judgment, you made the same assertion, namely, that, quote, the individual defendants, close quote, were entitled to qualified immunity. But as Judge Davis says, it was mighty bare bones. Now, in opposition to your motion for qualified immunity, did the plaintiffs go into each individual defendant, or did they just address them globally? No. The response was the same as what you see in Pelley's brief, which is defendants, the NOPD . . . So once they did that in their response or in their opposition to summary judgment, did you file a rebuttal to that, pointing out they failed to go into the individual defendants, they failed to point out how each individual defendant is not qualified to . . . is not qualified to go into the individual defendants? I don't know what's in the reply brief. How is it you don't know what's in the reply brief when you're up here arguing this case? Let me correct that. I know what's in the reply brief. I simply don't want to represent to you that we specifically requested that the plaintiffs address each individual . . . You know, I think that's about the most wishy-washy answer I've heard in 26 years. I understand, Your Honor. And I'm simply saying that this is the burden that falls on a plaintiff . . . No. For you to say, I know we said it, but I don't know what we said, I've never heard such an answer. So what did you say in your reply? Do you know? I do. All right. What did you say about failure to point out individual . . . failure to specify why each individual was not entitled to a qualified amendment? So in our reply brief, we complained to the Court that here we were with a Fourth Amendment claim, that we knew was a Fourth Amendment claim, and suddenly we were being told it was a Brady-style claim. We had never been told anything about any Brady-style claim that had been provided with any evidence that would have supported a Brady-style claim. And we implored the Court to rule on that basis, that there was simply insufficient evidence to determine whether or not a Brady-style claim had been made out. And again, whether or not the plaintiffs had met their burden of demonstrating that each individual defendant was not entitled to qualified amendment. And that's what we're going to find in the reply brief in district court in response . . . I'm not going to say as to each individual defendant, because I don't believe that's in there. And that's why I'm being wishy-washy, because I don't believe that's in there. You don't believe what's not in there? That each individual defendant is referred to in the reply brief. But in your reply brief, did you say, plaintiffs fail to point out as to each individual defendant how they are not entitled to qualified amendment? I can't say that we did, Your Honor. But I can't say that that's our burden. And we didn't think that that was our burden. And there isn't any case law that says that it is the defendant's burden to point this information out. And let me also note that Ashcroft v. Iqbal, which is a case in which the Supreme Court states that it is the burden of the plaintiff to individually name each officer, among many other cases. That doesn't go to qualified immunity. That goes to the existence of a claim in the first place. So if the point here is that the plaintiffs should be allowed to continue with a case with claims that don't exist under Ashcroft v. Iqbal, that seems to me to be a similarly inappropriate application of Supreme Court precedent. So if Ashcroft v. Iqbal says, if you can't name the individual officers, that's, by the way, that's a pleading stage. That's not even a summary judgment stage. But if Ashcroft v. Iqbal says, you legally have no claim against an individual defendant if you can't describe his individual actions, then, again, I understand your concern, and I'm similarly frustrated that this was not clear to us at the time, but we had just been told, hey, your Fourth Amendment claim is the Fourteenth Amendment claim. The thing that you thought you were trying to defend is this manipulation of evidence. When you say we had just been told, are you referring to their response in opposition to your motion for summary judgment? That's correct. And so we had gone through these many, many months, more than a year of discovery. We'd never even been told who the prosecutor was. So how can you make out a Brady claim or a Fourteenth Amendment claim for deprivation of a right to a fair trial if you can't even name the prosecutor? And so, yes, I'd say that's what we focused on in our reply brief, was that we didn't think that the elements of the claim, not only that they hadn't been established by the evidence that was presented, but that they had not even been pled, whether at the initial level, which, again, Ashcroft v. Iqbal applies to, but also then at the summary judgment level, where — In your reply to the opposition to summary judgment, did you point that out to the district judge — Yes. — and we request additional briefing or additional time to present additional matters in support of summary judgment? We did not, because it, again, was the plaintiff's burden to overcome summary judgment. I mean, we pointed out — Overcome qualified immunity. Both qualified immunity and summary judgment, and we were moving both on the qualified immunity basis and then also on the underlying claims. Because the Fourteenth Amendment claims sometimes qualified immunity and the underlying claim, they're much more — they're much closer in type than you might see in a Fourth Amendment claim, where the tension there between what an officer knows and what's in a warrant application can lead to more reasonable mistakes. I don't know that you can have — put it another way. I don't know that you can reasonably mistake — make a reasonable mistake about framing a criminal defendant. Well, but you see the situation that the court is in. Yes. Sure. The district court has said there are issues of fact on these due process claims. Sure. He had inadequate briefing from both sides on that issue. That's correct. He comes to us in the same position, and we have inadequate briefing on it. Yes. So, you know, under Kenny, if the district court's decision or opinion does not lay out some analysis on why he found material issues, genuine issues of fact, then we've got the option of either pouring through the record and see if we can start to find what he probably was looking at or send it back and let him do it. So, you know, the only way that gets done is when both sides help the judge. Sure. I mean, you can't expect him to just pour through the depositions and find that out. You know, they're practical sides of handling a motion, and I just don't see how you expect the court to do that without any help. I understand, and I'd simply say that in the future, it seems that the correct response is what Judge Barksdale is saying, that we should have implored the court to give us additional briefing so that we could address this Fourteenth Amendment claim that we didn't believe was the claim at issue. But I still don't see how that excuses the plaintiff. Maybe just as a matter of best practices, while we're talking about best practices, I don't see how that excuses the plaintiff from their obligation of saying, well, we don't think that this was briefed, but here's our Fourteenth Amendment claim. Here's how we prove that the right to a fair trial was deprived. Well, you may be right about that. Sure. You may be right. Maybe they fell down, too. Now, let's hear what they have to say. Thank you. Ms. Hoffman? May it please the Court, my name is Anna Benvenuti Hoffman, and I represent the plaintiffs, Darren and Marie Hill. Darren Hill, who suffers from severe mental illness, and— Yeah, we're familiar with the background of the case. Sure. Tell me, once the motion for summary judgment was filed, what did you file with the Court? Did you take each individual defendant who'd been sued and file a brief saying, Judge, here's the evidence on, say, the two responders, and here's the evidence on the coroner's office, whoever was in the coroner's office? Did you go through and provide the judge with record excerpts, record citations to show what their involvement was in the investigation? In the underlying factual statement, we do have information about the separate officers, but we did not in our brief address them individually, and the reason we did not address them individually is the defendants never addressed them individually. We had in this case— The burden does shift once they move for or file a motion based on qualified immunity. It does, but I think that that's qualified by—if you look at the Celotex case, defendants still have an initial burden of identifying what the basis is on which they're moving and what absence of facts they say that there is, what the issue is. Is that a qualified immunity case? No, that's one of the seminal summary judgment cases. There are different rules that apply to qualified immunity. Yes, but I think that there's still the obligation to identify for the court, for the district court, and for the opposing party, the basis on which you're moving for summary judgment, and that's— Usually, I'm sorry. Go ahead and answer, and then I'll follow up. That's from Celotex v. Catra, which is 477 U.S. 317 from 1986, and it says specifically, of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and missions on file together with affidavits, if any, which it believes demonstrate the absence of a genuine issue or two of fact. Well, that's simply stating what the normal summary judgment rule is, but to follow that in qualified immunity turns qualified immunity on its head, because generally, you don't even have discovery. One of the principles of qualified immunity is to put this to an end as quickly as possible and avoid discovery and avoid taking the officer away from his duties, et cetera, et cetera. So once the assertion is made of qualified immunity, which they raised in their answer to each individual, which they raised in their summary judgment motion, the burden shifted to you to show why each individual was not entitled to qualified immunity. Now, in this instance, you had a world of discovery, apparently, as opposed to the normal situation. So your burden is to show why they are not entitled to qualified immunity. Their burden is not to show why they are. And we did show . . . Individually. We did put in evidence about individual officers. We did not address in the briefing each officer individually, because we were addressing the issues that the defendants had raised, and they never made any argument. Their arguments were always, collectively, defendants had . . . First, as they pointed out, they only focused on the Fourth Amendment claim. There was no reason for that. The first count in our complaint is a due process claim. This is a claim about someone who spent two decades wrongly imprisoned. There's no question that this was a due process case. That was the primary claim. It was not a Fourth Amendment claim, primarily. There were limitations in discovery, because so many of the records had been lost. You know, that's why we didn't know who the prosecutor was. That's why we didn't have a trial transcript. We tried to recreate it. They couldn't find it. They couldn't relocate it. The court reporter, she couldn't recreate it. So there are limitations in what it is we had in discovery. But there's no question that this was a due process case, from the beginning. Why is it necessary for you to sue nine or ten individuals, when apparently the main focus is on this Detective Carter, Kathy Carter? Why do you need to hold in all these other officers, if you really don't have a valid basis for saying they're not entitled to qualified immunity? Honestly, we wouldn't intend to keep them in. The reason that they are in so far is because this issue was never raised and it wasn't briefed. The only issue with dropping the lesser defendants now is the issue with the suppressed identification procedure with the victim's boyfriend, GT. And the problem is, at this point, the defendants concede that that identification procedure happened. But each of the defendants individually, at their depositions, claimed, it wasn't me, I didn't know anything about it. So that's the one issue we have with just dropping, you know, any of the lesser defendants, because there is a question of fact as to who it is who actually conducted. Did you have evidence that somebody else other than Carter was involved in the identification? The evidence was... Are you talking about the lineup? I'm talking about the photo array conducted with the victim's boyfriend, GT, the suppressed photo array where he selected someone other than Mr. Hill. The evidence, what he said in his deposition, was that it was conducted by two male officers, but he didn't know who they were. Who said that? The victim's boyfriend, GT. Sorry, we're using initials, which is confusing. You don't need more than that to hold somebody in, don't you? Because it's two male officers, I mean... Well, I mean, it's a question of fact, then, who the officers are. I don't know about that. If you just say two unknown male officers, you can't hold ten police officers in on that. I believe it is a question of fact. I mean, first, the... I think we're bound by the district court's findings that they...that it was these officers... First, Carter, there's evidence that she knew about this in any event. She would have known about anything that happened. But for the male officers, I think it is a question of fact. There's no basis to believe that some unknown officer unaffiliated with this investigation who had nothing to do with this investigation was out there conducting an identification procedure randomly with this officer and not telling anyone about it. That makes no sense. So the obvious people who would be involved would be Gressert, who's the partner who was involved in the investigation, along with Carter, or potentially Hebert, or both, or some combination, because G.T. says it was two male officers who conducted this identification procedure. What are the... Let's get a little clarity here. The parties that have been dismissed from this action, New Orleans City has been dismissed. You agree to that dismissal? I know...we dismissed our Monell claim. Right. The reason...I'm not sure because the state law claims are not at issue here. I don't know whether we had any claims under state law that persist against... But your Monell claims, you've dismissed... We dismissed our Monell claim, yes. You dismissed the city? You dismissed S.E.R.P.A.S.? Did you dismiss him, the superintendent? It would be, yes. And you dismissed Taylor, the former superintendent? Yes. And I think there's one other. You dismissed, perhaps, Sachs, the assistant superintendent, deputy chief? I'm not...let me see. That would make sense. I don't think we have any evidence related to Sachs. So, those are out of the case? Are you saying they're out of the Monell claim, but not necessarily out of the state law claims? I didn't study up on the state law claims because they're not at issue here, so I don't know. But they're definitely not at issue in this. What are your remaining claims in this action? You've got a 14th Amendment due process claim? We have a 14th Amendment due process claim. We have state law claims on behalf of both Marie Hill and Darren Hill. There are other claims that were dismissed by the district court, but are not at issue in this appeal because it's a qualified immunity appeal, but that we think were wrongly dismissed. The Fourth Amendment claim, the court found that we had met factually our burden on each element, but he dismissed it as barred by the statute of limitations. We believe that was incorrect. There's a claim under the ADA, which was also dismissed by the district court. All right. If I could answer some questions, Judge Barksdale, that you asked to our opponent. The reply brief does not raise any issues about individual defendants, the defendants' reply brief. It also doesn't raise any issues about whether we could establish a 14th Amendment claim without evidence about the trial. The first time either of those issues was raised was on appeal. The issues raised on appeal, if you look at the appeal brief and compare it to the summary judgment briefing, is entirely different. The issues are completely different, and none of those issues were . . . We didn't have notice to put in evidence related to those issues, especially the trial issue, because the defendants actually stipulated that Mr. Hill was tried before the district court, so we didn't put in additional evidence on an issue that they had stipulated to. Now they're trying to contest suddenly on appeal. Are you saying they didn't assort in summary judgment that each individual was entitled to qualified immunity? They never made any arguments about the individuals or said anything about there's insufficient evidence as opposed to one individual officer as opposed to another. I don't even think they named the officers individually at all. All of their arguments were defendants, defendants collectively. Every once in a while, they'd mention Carter. That was it. Yeah, but in the answer, they did name each officer, and then the motion for summary judgment just referred back to the answer, didn't it? I mean, wouldn't that be a fair reading of the motion? I know they didn't name the officers in the motion. But the point is they never asserted any argument that maybe you've got a claim against Carter, but these officers who just came first at the scene, there's no assertion that they violated any constitutional rights. They never made any argument along those lines. And the way that this summary judgment briefing went, there were a lot of issues in discovery in this case because so much was lost. We ended up with a very compressed schedule. We had one week to respond to their summary judgment brief. We also had, as it was, had to seek an excess of the court's page limits for the brief that we filed. We did not have time, and we did not have space. Did you try to get an extension of time? We did, yes. We asked for extensions of time. The defendants objected. There was also issues because we couldn't get the victim's deposition because of health issues. We asked for an extension. The defendants consistently objected. And so we ended up having a very abbreviated schedule to respond. So we did not address issues that they did not raise in our briefing. If the court does not have any other questions. Well, I mean, just looking at the brief, it looks like to me that essentially you wanted to hold Carter in, as Judge Barksdale suggested. You didn't put anything in on the rest of them, or very little in on the rest of the defendants. So . . . There's no question there's more for Carter because she's the lead defendant than there is against the others. I think there is evidence against specifically Gresser and Hebert, who are the two who are most closely involved. And then also potentially Wagisbeck, who's the crime lab defendant. I mean, to say there's potential liability without any evidence is not going to hold somebody in on a motion for summary judgment, though. But I think we didn't put in additional evidence on certain issues because they weren't raised. It wasn't an issue . . . Well, see, when they move for . . . I mean, maybe they didn't brief the issue, but when they move for qualified immunity, then they're putting the issue . . . The burden is then shifted to you. To show that we have evidence to support our constitutional claims, which we did. We put in evidence . . . But not as to each individual. We put in evidence related to the individuals. We did not brief it related to . . . We didn't separately in our brief say, you know, and here's how it is that we marshal the evidence to say that there is a question of fact as to the direct involvement of this particular individual defendant. We did not. You just left it to the judge to go dig that out and . . . We didn't believe that they had raised that issue. They're trying to get the client out on qualified immunity, and you say you alleged a due process claim. I'm sorry? The motion was to get the client out of the case, get each officer out of the case, and you said you alleged a due process claim. Why did you not think it was in the case? Because their motion never made any argument specific as to each individual defendant. Their motion specifically said all the defendants collectively had probable cause. That's what their motion said. They said we're all entitled to qualified immunity because all of the defendants collectively had probable cause. And here's the information that the defendants collectively had that demonstrated that they had probable cause. So in our response, we put in evidence showing that they did not have probable cause, and we put in evidence of specific misconduct, mostly by Carter, but also by individual male officers, most likely including Gressert and Hebert. We didn't brief it specifically related to those officers because they didn't raise that issue. Okay. What is your response to the defendants pointing out about the swabs that were later used for the DNA evidence that the testing was not done by the New Orleans Police Department but was done by the coroner's office as far as that would have an effect on qualified immunity? Again, this is your claim that they withheld exculpatory evidence. That's right. The claim is not that the lab did anything wrong. The claim is that Carter, and this is something that the district court did find specifically, if you look at the record at page 2937, found that the results of forensic tests conducted with the investigation were reported directly to Detective Carter as the lead detective. There's evidence that that was consistent with the practice that the crime lab, particularly when testing was done as it was here very early on in the case, before it even would have been assigned to a prosecutor, the results were reported directly to the lead detective. This is where the court made the inference that Carter either didn't provide the information to the prosecutor or provided false information? Yes, I believe that the court found that the information was suppressed because if you look at the police reports, there's independent evidence that this testing was conducted at the time. When they went back to do the DNA testing, the swab had been cut, showing that they had cut off a piece before and done this testing and that the testing would have been reported to Carter, but it's the one document, the one testing document that's missing from a file that Carter then certified in her deposition was the complete file. So you've got testing, should have been exculpatory, reported to Carter, and it's missing. And so the district court found that there's sufficient evidence that she suppressed the exculpatory results. What did she answer? How did she respond to that question in her deposition about, did you withhold the swab testing analysis from the prosecutor or in other ways create a due process violation? I don't know that she was asked directly about that in her deposition. I think with a number of these issues about reporting to the prosecutor, what she said, and I don't know about that specifically, but certainly with the identification procedure, what she said was, I never knew about it, it never happened. So I think the obvious, you know, everyone's understanding was that meant she was saying she didn't report it to anybody because her current position is that it never happened and she didn't know about it. Okay. Thank you very much. Rebottle. So I first would like to address the GT identification issue, and I don't know that it's going to take very long, but I think there's some disagreement about whether GT testified that there were two male officers or one male officer, but what's clear and non-disputed is that there were unnamed NOPD officers or an officer who participated in what is asserted to have been a suggestive lineup. Well, the district court found that it was either a suggestive lineup, in which case GT selected Darren Hill, or it was a lineup in which GT did not select Darren Hill, he selected a filler, in which case that would have been exculpatory information that was withheld. And even if you want to use that as a basis to deny qualified immunity, that simply denies qualified immunity as to an unnamed male police officer, not as to any of the named defendants. And you can't create a fact issue, again, under ICWAL, you can't create a fact issue by simply saying, well, we don't know the name of the officer. That's your obligation at the pleading stage, and certainly it's your obligation at the summary judgment and qualified immunity stage. I also want to note, when we talk about a due process claim, that's a kind of a vague formulation, and it's not really clear what the due process claim is. In general, when you have a Fourth Amendment claim, it's securing the liberty interest by probable cause, whereas a Fourteenth Amendment claim will be securing the liberty interest by a right to a fair trial, and that has all of its concomitant rights. And so one of the questions, Judge Barksdale, that you just asked was, what did Cathy Carter say when she was asked whether she had provided this information to the prosecutor? And we knew that those questions hadn't been asked. We knew that those questions hadn't been asked of the prosecutor, because we didn't even know the name of the prosecutor. And we knew that those questions hadn't been asked of the defense attorneys, and we knew that no questions had been asked about what had occurred at the trial. And so when we talk about a due process claim and someone who intends to bring a due process claim and really wants to put their shoulder in it, especially if it's count one of their complaint, and we sit through these depositions, and we know that there isn't even an attempt to ask Cathy Carter if she withheld exculpatory evidence, that informed our approach to this case. And I'll stipulate that perhaps our motion best practices would have been to address all 18 counts in the complaint, and qualified immunity doesn't necessarily require that. But again, best practices, we probably should have named each individual officer, and we should have named each individual item in the complaint. But that doesn't absolve the plaintiff of the obligation to, especially on a qualified immunity motion, to establish a constitutional violation. And that means not, well, we looked at the, they said our information wasn't exculpatory, and so we just had to disprove that. You have to say, in order to establish a constitutional violation, this is exculpatory information. It was in the possession of a specific defendant. And with Cathy Carter, ask yourself whether the question was asked of the coroner's office, was this information routinely shared directly with prosecutors? Because all you know is that Cathy Carter might have been a recipient. If you look at the forensic test, they're also routinely shared with the doctor who collected the rape kit. So why isn't the coroner here? Why isn't the doctor who collected the rape kit here? How can the police be the, who can't even be shown from the face of the document to have received a document? How can they be the ones who suppressed it? The judge found that the report from the coroner's office came to Carter. That's correct. And I think we're bound by that under Kenney. I think that's right as to the document that exists, the report that exists, which is not exculpatory. First of all, it's not exculpatory. But second of all, where is the evidence that it was not shared with the defendant, with the criminal defendant? There was never any question as to whether Cathy Carter shared that document. And so what's at issue is whether there was a separate document that addressed the rectal swab specifically. Was this addressed in the briefing to the judge about, well, this wasn't, no showing it wasn't shared and so forth? No, it was not. I mean, you know, just not an orderly way to proceed. I agree. Okay. Thank you very much. We have your case.